# Exhibit C
# Plea Transcript

1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - -    X

4    UNITED STATES OF AMERICA,  :      CR 88 00496(S-7)

5          Plaintiff,           :

6          -against-            :
                                       United States Courthouse
7                                       Brooklyn, New York
     LORENZO NICHOLS,           :
8                                       September 28, 1989
          Defendant.            :      9:30 o'clock a.m.
9
     - - - - - - - - - - - -    X
10

11                      TRANSCRIPT OF PLEA
                 BEFORE THE HONORABLE EDWARD R. KORMAN
12               UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Government:           ANDREW J. MALONEY
                                   United States Attorney
15                                 BY: LESLIE CALDWELL
                                        PETER SHERIDAN
16                                 Assistant United States Attorneys
                                   225 Cadman Plaza East
17                                 Brooklyn, New York

18   For the Defendant:            LAWRENCE A. VOGELMAN, ESQ.
                                   55 FIFTH AVENUE
19                                 New York, N. Y.   10003

20
     Court Reporter:               Joseph Barbella
21                                 225 Cadman Plaza East
                                   Brooklyn, New York
22                                 718-330-7687

23

24   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
25

GOVERNMENT
EXHIBIT
3500-37
88 Cr 496

1        (The following took place in chambers.)

2        THE CLERK: U.S.A. versus Lorenzo Nichols.

3        MS. CALDWELL: Leslie Caldwell for the government.

4        MR. SHERIDAN: Peter Sheridan.

5        MR. VOGELMAN: Lawrence A. Vogelman for the defendant.

6        THE CLERK: Plea agreement marked Court Exhibit 1.

7        MR. VOGELMAN: I think the first thing we have to do

8   is the waiver of indictment before we --

9        THE COURT: All right.

10       Mr. Nichols, we really have a separate bundle of

11  rights that that you are giving up that I have to go through

12  with you with separately.

13       The first of these rights deals with respect to how

14  criminal charges are filed against you which you are waiving,

15  and the second deals with the rights that you would have if you

16  went to trial after the charges against you were filed.

17       And I have to go through them with you one-by-one with

18  respect to your rights to be sure that you understand what

19  rights you are giving up by waiving your right to an indictment

20  by a grand jury and by pleading guilty.

21       And I also have to be sure with respect to your plea

22  of guilty that you are guilty of the crime to which you are

23  pleading guilt and that you know what can happen to you as a

24  result of that plea of guilty. That is, what the maximum

25  sentence that can be imposed as a result of your plea of

1    guilty.

2          If you have any questions as we go along, if you don't

3    understand anything that I say, don't hesitate to interrupt

4    me.   I will be happy to answer any questions that you may

5    have.

6          Do you understand what I just said?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Swear the defendant.

9          (Defendant sworn.)

10         THE COURT:  You understand now you have taken an oath

11   in which you have sworn to answer my questions truthfully.

12   That means if you should lie and make any false statement you

13   would be subject to prosecution for perjury.

14         Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Can you tell me how old you are.

17         THE DEFENDANT:  Thirty.

18         THE COURT:  What is the extent of your education and

19   schooling.

20         THE DEFENDANT:  Ninth grade.

21         THE COURT:  And are you presently or have you recently

22   been under the care of a physician or psychiatrist?

23         THE DEFENDANT:  No.

24         THE COURT:  In the past 24 hours have you taken any

25   narcotics, medicines or pills or drunk any alcholoic beverages.

```
 1              THE DEFENDANT:  Medicine.

 2              THE COURT:  What kind?

 3              THE DEFENDANT:  For pain in my -- for my back.

 4              THE COURT:  Do you know the name of the medicine?

 5              THE DEFENDANT:  No, I don't.

 6              THE COURT:  Does it effect you in any way, your mind?

 7    Does it make you drowsy?  Does it have an impact on your

 8    ability to think, reason or understand what is going on?

 9              THE DEFENDANT:  No.

10              THE COURT:  Why don't you find out what that medicine

11    is that he's taking.

12              MS. CALDWELL:  I will do that.

13              THE COURT:  And get me a -- some sort of a letter

14    describing what the potential side effects are.

15              Have you ever been hospitalized or treated for

16    narcotics addiction?

17              THE DEFENDANT:  No.

18              THE COURT:  Is your mind clear right now?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Do you understand what is going on here

21    now?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Mr. Vogelman, have you discussed this

24    matter with your client?

25              MR. VOGELMAN:  I have.
```

1    THE COURT:  Does he understand the rights he will be

2    waiving by waiving his right to indictment by grand jury and by

3    pleading guilty?

4    MR. VOGELMAN:  Yes, he does.

5    THE COURT:  Is he capable of understanding the nature

6    of these proceedings?

7    MR. VOGELMAN:  He is.

8    THE COURT:  Do you have any doubt as to his competence

9    to plead at this time?

10    MR. VOGELMAN:  No.

11    THE COURT:  Or to waive his right to indictment by

12    grand jury?

13    MR. VOGELMAN:  No, I do not.

14    THE COURT:  Have you advised him of the maximum

15    sentence and fine that can be imposed as a result of this

16    guilty plea?

17    MR. VOGELMAN:  I have.

18    THE COURT:  Have you, Mr. Nichols, had an opportunity

19    to discuss this case with Mr. Vogelman and are you satisfied to

20    have him represent you here?

21    THE DEFENDANT:  Yes.

22    THE COURT:  Have you received a copy of this

23    superseding information which contains the charges that the

24    government wishes to file against you?

25    THE DEFENDANT:  Yes.

1          THE COURT:  I'm going to read it to you.  And it

2   reads:

3          From at least July 1985 until on or about August 11,

4   1988, the defendant Lorenzo Nichols -- I'm going to leave out

5   all the also knowns -- headed an organization of individuals

6   who associated together for the purpose of engaging in the

7   business of narcotics trafficking.  The goal of the

8   organization, which will be referred to here as the Nichols

9   Enterprise, was to earn large amounts of money through

10  trafficking in wholesale quantitites of heroin, cocaine and-

11  cocaine base (crack), primarily in Jamaica, Queens, New York.

12         The Nichols Enterprise constituted a quote, enterprise

13  as defined by 18 U.S.C. Section 1961(4).  This enterprise

14  engaged in, and its activities affected interstate and foreign

15  commerce by, among other things, the sale in New York State of

16  controlled substances that had been brought into New York from

17  places outside thereof.

18         In furtherance of the goals of the Nichols Enterprise,

19  Nichols and other members of the entries engaged in acts of

20  violence, including murder.

21         Count 1.

22         On or about November 11, 1986, within the Eastern

23  District of New York and elsewhere, the defendant Lorenzo

24  Nichols, for the purpose of maintaining and increasing his

25  position in the Nichols Enterprise, an enterprise engaged in

1   racketeering activity, did knowingly and intentionally command,
2   induce, procure, aid and abet another to murder Isaac Bolden,
3   in violation of New York State Penal Law Sections 125.25 and
4   20.00.

5          Count 2.

6          On or about December 20, 1987, within the Eastern
7   District of New York and elsewhere, the defendant Lorenzo
8   Nichols, for the purpose of maintaining and increasing his
9   position in the Nichols Enterprise, an enterprise engaged in
10  racketeering activity, did knowingly and intentionally command,
11  induce, procure, aid and abet others to murder Myrtle Horsham,
12  also known as Myesha, in violation of the New York State Penal
13  Law Sections 125.25 and 20.00.

14         Do you understand this charge?

15         THE DEFENDANT: Yes.

16         THE COURT: Have you discussed it with Mr. Vogelman?

17         THE DEFENDANT: Yes.

18         THE COURT: Now, you see this on this information?  It
19  is signed by in this case the Acting U.S. Attorney.  Do you see
20  that signature there.

21         THE DEFENDANT: Yes.

22         THE COURT: This charge is a serious charge under our
23  law.  It's a felony under the laws of the United States.  And
24  it could not normally be brought without your consent simply
25  under the signature of the U.S. Attorney or somebody he

8

1   authorizes to sign this document.

2          Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Under our system of law, before a citizen

5   can be charged with a serious crime such as this, the United

6   States attorney has to present the evidence that he has before

7   a grand jury which is composed of 23 people from the community,

8   at least 12 of whom must conclude that there is probable cause

9   to believe that the person whom the United States Attorney

10  wishes to charge with a crime, is in fact guilty of that

11  crime.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  The reason for this requirement is that --

15  strike that.

16         The purpose of the grand jury then is to act as a

17  check on the power of the prosecutor.

18         Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Because for someone to go through the

21  burden, the expense, the trauma of defending against a crime is

22  a serious matter and we don't believe under our system of law

23  that that decision should rest solely with the prosecutor.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  What you're doing by giving up your right

2    to an indictment by a grand jury is you are giving up this

3    check on the power of the prosecutor and you are letting him do

4    what he otherwise couldn't do, which is file these charges

5    against you solely under his own signature.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  If you did not waive your right to an

9    indictment by a grand jury, the U.S. Attorney could present

10   these charges to a grand jury.  The grand jury could choose to

11   indict you or not indict you.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  If you waive your right to an indictment

15   by a grand jury, the case will proceed against you in exactly

16   the same way as if you had been indicted by a grand jury.

17         Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And do you understand now what it is to

20   waive your right to an indictment by a grand jury?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you wish to waive your right to an

23   indictment by a grand jury?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Mr. Vogelman, do you know of any reason

1   why the defendant should not waive his right to an indictment

2   by a grand jury?

3          MR. VOGELMAN:  No, your Honor.

4          THE COURT:  Have you discussed with him his decision

5   to waive his right to an indictment by grand jury?

6          MR. VOGELMAN:  Yes.

7          THE COURT:  Have you discussed with Mr. Vogelman your

8   decision to waive your right to indictment by a grand jury?

9          THE DEFENDANT:  Yes.

10         THE COURT:  All right.

11         I find that the waiver is knowingly and voluntarily

12  made and I accept it.  The clerk will file the information.

13         MR. SHERIDAN:  The record should reflect the defendant

14  is executing the written waiver of indictment form.

15         THE COURT:  All right.

16         The next set of rights that we deal with are the

17  rights that you would have if you went to trial.  These are the

18  so-called trial rights that you give up.

19         And the first thing that you have to understand is

20  that you don't have to plead guilty.  That is, under our law,

21  even if you are guilty of the crime with which you are charged,

22  even if you believe that you are guilty, the government is

23  still required to prove that you are guilty.

24         And you can force the government to prove that you are

25  guilty beyond a reasonable doubt.  If the government fails to

1    prove that you are guilty beyond a reasonable doubt, the

2    obligation of the jury would be to return a verdict of not

3    guilty even though you may be guilty.

4              Do you understand what I just said?

5              THE DEFENDANT:  Yes.

6              THE COURT:  So the first thing you have to understand

7    is that you do not have to plead guilty.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  If you plead guilty, as I said a moment

11   ago, you would be entitled to a speedy and public trial by jury

12   with the assistance of counsel on the charges contained in this

13   superseding information.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  We were scheduled to pick a jury on Monday

17   on the charges that are presently pending against you.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  At the trial you would be presumed to be

21   innocent and the government would have to overcome that

22   presumption and prove you guilty by competent evidence and

23   beyond a reasonable doubt, as I said to you.

24             And you would not have to prove that you are

25   innocent.  And if the government failed to prove you are guilty

12

1   by competent evidence and beyond a reasonable doubt, the jury

2   would have the duty under the circumstances to find you not

3   guilty.

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  What you are doing by pleading guilty is

7   you are relieving the government of the burden that they would

8   have of proving that you are guilty and you are admitting your

9   guilt.

10           Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  In the course of the trial, if you went to

13  trial, the witnesses for the government would have to come to

14  the courtroom in which you have been in on a number of

15  occasions, they would testify from the witness box, right near

16  where I sit, in your presence, and your lawyer would have the

17  right to ask questions of these witness, what we refer to as

18  cross-examination.  He would have the opportunity to object to

19  evidence offered by the government and to offer evidence on

20  your behalf.

21           Do you understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And what you're doing by pleading guilty

24  is you give up these rights which we have sometimes referred to

25  as the right to confront the witnesses against you.

1           Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And at the trial you, too, would have the

4    right to testify if you chose to do so.  You could not,

5    however, be forced to testify as a witness by the government.

6    Under our law the defendant in a criminal case cannot be forced

7    to take the witness stand at his own trial and say anything

8    that can be used to show that he's guilty of the crime with

9    which he is charged.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And if you were to exercise this right,

13   which we sometimes refer to as the privilege against

14   self-incrimination, I would instruct the jury that they could

15   not hold that against you.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  In a few minutes I am going to ask you to

19   tell me in your own words what it is that you did so that I can

20   satisfy myself that you are guilty of the crime to which you

21   are pleading guilty.  In answering my questions you will be

22   saying things which show that you are guilty of the crime to

23   which you are pleading guilty, and you will be giving up the

24   right that I just described, which is the right not to say

25   anything which can be used to show you are guilty of the crime

1  for which you are charged.

2            Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  If you plead guilty and I accept your plea

5  you will be giving up your constitutional rights to a trial and

6  the other rights that I just discussed.  There will be no

7  further trial of any kind and no right to an appeal.  I will

8  simply enter a judgment of guilt on the basis of your guilty

9  plea.

10            Do you understand that?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Are you willing to give up your

13  constitutional rights to a trial and the other rights that I

14  just discussed?

15            THE DEFENDANT:  Yes.

16            THE COURT:  All right.

17            I have read the superseding information to you.  You

18  have indicated that you discussed the charges in that document

19  with your lawyer and you understand the charges.

20            Do you know the maximum sentence and fine that can be

21  imposed as a result of your plea of guilty?

22            THE DEFENDANT:  Yes.

23            THE COURT:  What is your understanding?

24            THE DEFENDANT:  Maximum sentence?

25            THE COURT:  Yes.

1          THE DEFENDANT:  Life.

2          THE COURT:  And in addition there is a period of five

3   years supervised release that I also must impose.  And what

4   that means is that if after you are released from whatever

5   sentence I impose, you violate the conditions of your release,

6   you would go back to jail not just to complete the original

7   sentence that I imposed, but the original sentence plus

8   whatever period of supervised release I impose.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And you would not get credit toward that

12   supervised release time that you would have to serve by virtue

13   of any time that you already had been out on parole.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  In addition, the maximum fine is a quarter

17   of a million dollars.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Finally, a 50 dollars special assessment.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  What we have just gone over applies to

24   Count 1 and to Count 2.  Do you understand that?

25          THE DEFENDANT:  Yes.

1       THE COURT:  Do you have any questions you would like

2   to ask me about this charge or your rights, or anything else

3   relating to this matter?

4       THE DEFENDANT:  No.

5       THE COURT:  Are you ready to plead?

6       THE DEFENDANT:  Yes.

7       THE COURT:  Do you know of any reason why the

8   defendant should not plead guilty?

9       MR. VOGELMAN:  No, I do not, Judge.

10      THE COURT:  Are you aware of any legal defense that

11  could be successfully asserted to the charges contained in this

12  superseding information?

13      MR. VOGELMAN:  None.

14      THE COURT:  How do you plead to Count 1 of the

15  superseding indictment, guilty or not guilty?

16      THE DEFENDANT:  Guilt.

17      THE COURT:  How do you plead to Count 2 of the

18  superseding information, guilty or not guilty?

19      THE DEFENDANT:  Guilty.

20      THE COURT:  Are you making this plea of guilty

21  voluntarily and of your own free will?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Has anyone threatened or forced you to

24  plead guilty?

25      THE DEFENDANT:  No.

1          THE COURT:  The document there that has been marked

2     Court Exhibit 1, do you have the original now?

3          MS. CALDWELL:  Yes, he does.

4          THE COURT:  This is a copy of the agreement which I

5     understand that you and your attorney have entered into with

6     the government.

7          Is that your signature on that agreement?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Did you read that agreements before you

10    signed it.

11         THE DEFENDANT:  Yes.

12         THE COURT:  Does that agreement accurately reflect

13    your understanding of the agreements that you have entered into

14    with the government?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.

17         You will hold onto that document.

18         MS. CALDWELL:  I will, Judge.

19         THE COURT:  Other than whatever promises the

20    government made in that agreement, if any, has anyone made any

21    other promise that caused you to plead guilty?

22         THE DEFENDANT:  No.

23         THE COURT:  Has anyone made any promise to you as to

24    what your sentence will be?

25         THE DEFENDANT:  No.

1           THE COURT:  All right.

2           With respect to Count 1 of the superseding

3    information, can you tell me in your own words what it is that

4    you did with respect to the charge that on or about

5    November 11, 1986, for the purpose of maintaining and

6    increasing your position in what has been described as the

7    Nichols Enterpirse, you did knowingly and intentionally

8    command, induce, procure, aid and abet another to murder Isaac

9    Bolden?

10          THE DEFENDANT:  Yes.

11          THE COURT:  First of all, who is Isaac Bolden in

12   relation to this Nichols Enterprise?

13          THE DEFENDANT:  He's a person that robbed us.

14          THE COURT:  Okay.  And what did he rob you of?

15          THE DEFENDANT:  How much money?

16          THE COURT:  Money, narcotics?

17          THE DEFENDANT:  Money and jewelry.

18          THE COURT:  What did you do as a result of that?

19          THE DEFENDANT:  For the robbery I didn't do anything.

20   But afterwards, you know, he told me who was involved in the

21   robbery.  Then he went back and told the people what he had

22   told me.  And in other words he tried -- he jeopardized the

23   people that was with me by telling the people that he had told

24   me that they was down with the robbery.  And then that's when I

25   did something.

1           THE COURT:  What did you do?

2           THE DEFENDANT:  I order his death.

3           THE COURT:  I assume you didn't carry it out yourself,

4    did you.

5           THE DEFENDANT:  No.

6           THE COURT:  Who carried it out?

7           THE DEFENDANT:  Associate.

8           THE COURT:  In the indictment they refer to the

9    Nichols Enterprise as an organization of individuals associated

10   together for the purpose of engaging in the business of

11   narcotic trafficking.

12          Was there such an organization?  Was there a group of

13   people of which you were the head who were associated together

14   for the purpose of engaging in narcotic trafficking?

15          THE DEFENDANT:  Yes.

16          THE COURT:  You have to go over this a little slowly

17   for me, why it is that you ordered the murder.  It wasn't quite

18   clear to me when you said it.

19          He participated in robbing you and other members of

20   your organization of money and jewelry?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And then what did he tell you?

23          THE DEFENDANT:  He participated in robbing us, but

24   then I found out he had -- he was involved in the robbery.

25          THE COURT:  Right.  You mean you didn't know when he

1  told you himself?

2          THE DEFENDANT:  No.  Somebody else told me.  Then he

3  verify that he was involved in the robbery.  I know him for

4  years.  And so I told him, just don't worry about what you

5  did.  Just go ahead and point me towards the people that was

6  with you.

7          And he did do that.  He pointed me toward the people

8  that was with him.  And then he turned around and point the

9  people toward me.

10          THE COURT:  I see.  So that they presumably would .

11  either be going after you or interrupting your efforts to go

12  after them?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.

15          Are there any other questions I should ask with

16  respect to this count?

17          MS. CALDWELL:  No, there aren't.

18          THE COURT:  All right.

19          Count 2 says that on or about December 20, 1987,

20  within the Eastern District of New York and elsewhere, for the

21  purpose of maintaining and increasing your position in the

22  Nichols Enterprise, you did knowingly and intentionally

23  command, induce, procure, aid and abet others to murder Myrtle

24  Horsham, also known a Myesha.

25          Who is Myrtle Horsham in relation to this Nichols

1    organization or enterprise?

2              THE DEFENDANT:  What she was to me?

3              THE COURT:  To the organization.

4              THE DEFENDANT:  She was a person who held money and

5    held drugs.  She hold drugs and money.

6              THE COURT:  Why was her death ordered?

7              THE DEFENDANT:  It was -- some money had came up

8    missing, you know.  She had turned around and spent it on

9    another person.  In other words, the money came up missing.

10   She had spent it on a dude.  But she was my girlfriend.  She

11   took my money and spent it on another person.

12             THE COURT:  Okay.

13             THE DEFENDANT:  And that's the way.

14             THE COURT:  As a result what did you do?

15             THE DEFENDANT:  I -- once I found out, you know, then

16   I order her death.

17             THE COURT:  It was carried out by your associate?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Was one of the purposes of this to teach

20   other people in the organization a lesson about not stealing

21   from you?

22             THE DEFENDANT:  It wasn't just the stealing.  It was

23   the fact that she was my girl and she took my money and spent

24   it on another person.

25             MR. VOGELMAN:  Can I have a second, Judge?

1          THE COURT:  Yes.

2          (Mr.Vogelman confers privately with defendant.)

3          THE COURT:  Was there any other reason other than your

4    desire -- other than jealousy, shall I say?

5          THE DEFENDANT:  Yeah.  Because in other words she made

6    me look bad in front of people who was within the organization.

7          THE COURT:  Then undermind your position as the head

8    of the organization?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Are there any other questions I should

11   ask?

12         MS. CALDWELL:  No, your Honor.

13         THE COURT:  All right.

14         Based on the information given to me I find that the

15   defendant is acting voluntarily, that he fully understands his

16   rights and the consequences of his plea, and that there is a

17   factual basis for the plea with respect to both Counts 1 and 2

18   of this information, and therefore, I accept the plea of

19   guilty.

20         Probation will set a date for sentence.

21         MS. CALDWELL:  There a couple of other matter.

22         First, we would move that the minutes of this

23   proceeding be sealed and also that the plea itself be filed

24   under seal, the charging instrument to be filed under seal.

25         THE COURT:  All right.

1          Have you prepared the --

2          MS. CALDWELL:  I will bring a sealing envelope down.

3          THE COURT:  Rose will take care of that.  Take my

4     copy.  I don't want it laying around here.

5          MS. CALDWELL: ████████ █ ████ g █ █ █ ████████ █, █

6     █ █ a ████ t ████ es, █ ██ █ ████████████

7     ████ d █ o ████████ s ████ on ████ n. ████ █ █ e

8     █ █ ████ s ████ s █ █ █ ████████ █ ████████ on

9     █████ t ████████████ red ████ ████████ le.

10         ████████ y ████ ed ████████ s. ████████ nd █ █

11    ████ l ████ s ████████ r ████████ █ ████ t ██████ ng █ █. ████ █

12    █ █ ████████████ h █ █.

13         THE COURT:  All right.

14         ████████ e ████████ ty ██████ s █ █ ██████ e?

15         ████████████ ██ █ █ █ ████████ ts █

16    █████ le.

17         █████████████████ l ████████ e █ █ █ e

18    ████ e █ s ████ h ████ le ██████ █ ████ █ ████ r █

19    ████. ████████ █ █ ████████ r █ ?

20         █████████████████, ████████ █ ██████ n █ █ t █,

21    ████████ s █ l ████████ d ████████ g █ s ████ ce █ o █

22    █████ s █ ty ████.

23         ████████ s ████ ed █ o █ t ████ ts █ l ████████ █

24    ████ er ████ █ █ █ █ t ████ █ ████████ r ████████ ty

25    ████ s █ ████ s ████████ t.

1       THE COURT:  All right.

2       Anything else?

3       MS. CALDWELL:  I don't believe so, your Honor.

4       MR. VOGELMAN:  Nothing, your Honor.

5       THE COURT:  All right.

6       MR. VOGELMAN:  Thank you.

7       (End of proceedings.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25